First case this afternoon is case number 4-16-0825, Peeble v. Ricky Patterson. Counsel, could you identify yourselves for the record? Michael Gomez for me, thank you. Thank you. Mr. Gomez, are you ready to proceed? Yes, sir. You may. Good afternoon, Your Honors, Counsel, and may it please the Court. My name is Michael Gomez from the Office of the State Appellate Defender, and I am here on behalf of my client, Mr. Ricky Patterson. Now, the viability of our criminal justice system depends on people's faith that it works, that it's fair, that the goal is to seek the truth. Now, that faith arose when the states and even defense attorneys' gamesmanship works to keep defendants out of court and obstruct their chances of getting a fair shot. And that's what happened in this case. Now, the state, on its own accord, once it found out that Mr. Patterson had filed a pro se motion seeking an extension of time to seek private counsel to represent his request for independent testing, on its own accord had the DNA retested, and not because it wanted to, not because it thought that DNA testing was required here, and it was for the explicit purpose of rendering Mr. Patterson's motion moot. That's at volume 29, pages 2 through 3, so that the petition would be rendered moot to keep Mr. Patterson out of court. Now, Mr. Patterson had requested independent testing from way back in his initial motion in 2006. The title of that motion, that pro se motion, was Motion for Independent Testing. This court in 2012 remanded his case because of the prior post-conviction counsel's unreasonable assistance for failing to develop that claim at the evidentiary hearing and post-conviction process. When he was represented by new counsel who filed an amended motion, that independent testing request was dropped. But Mr. Patterson, behind the scenes, continued to request it with his attorneys. Now, once Mr. Patterson's attorney told him that it was not in the budget to request independent testing through the Public Defender's Office, he filed a pro se motion on November 8, 2013, to hire private counsel. He wanted an attorney who would represent his legitimate request to get independent testing in this case. Counsel, I have a couple of questions. Yes. With respect to the testing that your client wanted done and the testing that his expert, I can't recall if it was an affidavit or I believe it was an affidavit, was that the type of testing that was done by the state? No, Your Honor. That testing, Dr. Carl Reich is the affidavit, is the expert who submitted an affidavit in support of Mr. Patterson's motion for additional testing. Now, in Dr. Reich's affidavit, Common Law Record, page 756, in paragraphs 14 to 15, Dr. Carl Reich suggested a combination of an identifiler and minifiler. That would be the best combination to yield a more complete profile for the degraded DNA or the degraded partial profiles that are available in this case. And so that was not done by the state this most recent time? That was not done. All we have is a document signed by Ms. Kelly Gannon or Kelly Lawrence, as she is now named, and she used, according to the document, she used the identifiler plus and a melogenin as the two kits. It was not the identifiler and minifiler plus that, or a minifiler, that Dr. Reich suggested would yield the most accurate results in this case. So even the test that Dr. Reich recommended was not done in this case. It is important to note, there's never been any admission of this second test. We don't know what happened. We don't know the processes used by that Ms. Gannon or Ms. Lawrence used in the additional retesting. So your client has not been provided with the results? According to the record, Your Honor, Mr. Patterson has received some of those materials related to the second testing, but they are not part of this record on appeal. Well, your implication is that they just filed an affidavit, but that they didn't actually do the testing. That was kind of the implication of your preparatory remarks about the second test. No, Your Honor, we don't know what the particular test, the identifiler plus and the melogenin, when used in combination, what those test for. We don't know if those would yield the most complete and most accurate results. Did Dr. Reich in his affidavit indicate specifically that these other tests were the tests that were to be conducted, or did he simply indicate that there were other tests available? Dr. Reich in his affidavit did state that other tests were available. He didn't say that they need to do A, B, and C. He said that there are several other types of tests which are now available, and he named them, didn't he? Yes, he named several tests, and then he goes on. And of the ones he named, the state has now conducted one of those. One of those, which was identifiler plus. But 15 loci, PCR, DNA, identifiler plus. Yes. But what's important in this case is that Dr. Reich identified the minifiler test. And the minifiler test is designed specifically. Well, counsel, let me ask you this. You're saying he identified this test. Was it, as Justice DeArmond said, just a list of multiple additional tests that are available, or was he saying this is the test that needs to be done in this case for the most accurate results? So Dr. Reich suggested that more tests were, that more advancements had been made in the field of DNA technology. Now technology tests for 15 loci. And there are kits that test for those 15 loci, and he named a few. Identifiler, identifiler plus, PowerPlex HS. And then he goes on to state that there's a minifiler, which is used as a supplement to the other tests. And the minifiler is specifically marketed for one type of degraded DNA. And this is what we're dealing with here. The problem in this case is that there is degradation on this DNA. And there will always be degradation on this DNA. And there's this minifiler, which is used specifically for degraded DNA. Dr. Reich was aware of the issues with regard to the degraded DNA, right? Yes. Okay. Did he say in his affidavit that unless you have this minifiler plus, you cannot rely upon any of these other tests, which I say are now available, including the 15 loci PCR DNA test? He did not state that specifically, Your Honor. He stated instead that the combination of an identifiler and minifiler is designed to provide a full DNA profile data from the samples that are size degraded, a particular type of DNA damage that is sometimes observed. And here, the problem again is that there is degraded DNA. Counsel, going through the briefs in this case, I thought the issue in this case was who did the testing, not what testing was done. Yes, Your Honor. The main issue in this case is that Mr. Patterson has never had anyone but the same trial analyst analyze that DNA. So you don't have a problem with the testing that was done? Well, one of the State's arguments is that Mr. Patterson got the test he wanted, that there are two conclusive results now, and that now he's seeking a third additional test. The only reason that a third test would have to be done was because the State had the DNA retested to render the motion moot. So really, Mr. Patterson is still seeking that second test. Now, this third test... Again, your implication is that there was some nefarious motive in having the test done, as opposed to the possibility that the State looked at the motion, realized that, yeah, the doctor's affidavit is right, there are more sensitive tests available, so we'll use one of those more sensitive tests that he's now recommending. And they did so. Well, Your Honor... Essentially granting his, essentially agreeing with his motion. The record does not support that, Your Honor. In fact, the State, at two status hearings, stated that it was against the motion, that it did not agree with the motion, that it did not believe Mr. Patterson had a colorable claim for additional testing. But they went ahead and did it. They went ahead and did it to render the motion moot. And it stated that... What would be one of the bases for rendering a motion moot? One of the bases is to get Mr. Patterson off the court. What would be another basis? You know, there could be many bases to render the motion moot. To essentially answer the question, right? To essentially answer the question, there would no longer be the issue. We have now resolved the issue by getting the additional testing. Wouldn't that be an additional motive? Well, Your Honor, there's still the issue that Mr. Patterson requested independent testing. And that's really what... Now we're getting to who. Yes. And that was Justice Harrison's question. Correct, Your Honor. And that's really what's at issue here. It's not whatever may have happened at that second test. It's that Mr. Patterson requested independent testing. The state and defense counsel at that point agreed to have the DNA retested, and it was by that same analyst. And this was just a week, actually less than a week, after Mr. Patterson stated his request to have the DNA retested by an independent analyst or an independent laboratory. But the statute doesn't require that. Is that correct? No, the statute does not require that, but it's not precluded. And when there is a basis in the record to order independent testing, then the court should order independent testing when the circumstances call for it. And here it did. And what's your support for that statement that you made? Statutorily or case law? At this juncture of a case. As far as why independent testing is available under the statute? Yes. For several reasons, Your Honor. First, the language of the statute says that the test must be done under reasonable conditions, which indicates or suggests that the court has some discretion as to who and what laboratory may do these tests. Second, we can't read exceptions into the statutes. There is no list provided, so it would be against principles of statutory construction to say that independent laboratories and independent experts wouldn't be able to analyze any DNA. Third, the phrase to protect the state's interest in the integrity of the evidence and the testing process in the statute would be rendered meaningless. And words are not superfluous in the statute. So to give those words meaning, there has to be some availability for someone other than the state to retest those DNA. Now, at the trial level, the statute specifically talks about independent testing, right? Yes. So what should we infer from the fact that it's specifically named in that section as it relates to trial, but it doesn't say that as it relates to, I'll just say, post-conviction? Yes, Your Honor. One, the rule is under criminal proceedings in the trial court. So those rules give defendants a right to independent testing as part of the discovery process. Here, this is a different mechanism. It's a collateral proceeding, and it would make no sense for there to be a right to independent testing at trial and to cut off that right and to say there is no more independent testing available after trial. But why didn't they say it? I mean, they know how to say it because they say it for the trial level. At the trial court level, you know, before trial, you can ask for independent testing. It specifically says that. So is there something to be inferred from the fact that they made the decision to not specifically say that as it relates to collateral proceedings or post-conviction? I would say there is not, Your Honor. If, you know, this court does find that the statute is ambiguous, the rule of lenity would require it to find in Mr. Patterson's favor that given that there is no language excluding independent experts or laboratories from testing this evidence, that there should be that independent, there should be that option for defendants to demonstrate the need for independent testing on a case-by-case basis. And here, there is that basis for independent testing. Ms. Gannon misrepresented the results at trial. As I said before, this was degraded DNA. These were partial profiles. Instead, she said, and I quote, I was able to determine that the blood found on the carpet did match that of Derek Prout. This is the most important, crucial evidence in this case. And we have no idea what effect that had on the jury. It said that they matched. She also went on to state what the specific findings were. She did state that there were, she did give the statistical probabilities, which Dr. Wright stated in his affidavit, are misleading because these were degraded DNA and alleles are independent events. You can't extrapolate any other information from individual alleles. So to say there was a match, that was scientifically incorrect to say that. Yes, Your Honor. And, in fact, 10 years later, in that same affidavit at Common Law Record, page 918, which is the, I'm sorry, not the affidavit, the report on the second testing, 10 years later, Ms. Gannon made the exact same error. She said a DNA profile was obtained from a carpet that matches the DNA profile obtained from Derek Prout. And even the state, in their response to the motion to reconsider, says the new test matched. So everyone is using this scientifically impossible language. There's been no match. There cannot be a match. But there can be a more complete, a more accurate profile, which is what Dr. Wright stated in his affidavit, which is the identifiler and midifiler would yield that. Mr. Gomez, may I ask you about the standard of review here? Sure. You wrote in your brief that the standard for reviewing the denial of a Section 116-3 motion is de novo. You also later in your brief indicate that the trial court had the discretion to order independent testing but chose not to exercise that discretion. So what action by the trial court are we reviewing here? It's determination that it would not have the testing done by an independent expert, and if so, is that subject then to an abuse of discretion standard of review? Or are you asserting that this was the denial of a 116-3 motion and so subject to de novo review? Yes, Your Honor. The court failed to exercise any discretion in this case. And this court can review this case and provide relief based on the pleadings. How do we know it didn't exercise any discretion when it seems the defendant filed the motion, the State obtained the testing, and then the court determined that the issue was moot because the retesting had been done? And you may be right, I'm not grasping here the trial court's refusal to exercise discretion. Maybe just walk through what the decision is that you're appealing and what standard applies to that. Yes, Your Honor. At the first instance, at the decision on the DNA motion itself, before Mr. Patterson, before this court demanded consideration of the motion to reconsider, the court found that the DNA motion was moot and chose not to exercise any discretion. It said that there was no objective basis in the record to exercise discretion to allow independent testing. Then upon the motion, when the court considered the motion to reconsider, where Mr. Patterson was finally represented by private counsel who had advanced his request for independent testing, at that point the court did not really state any ruling. It just said it agreed, and I quote, the State's response was appropriate. So there's been no, there's no basis in the record or there's nothing in the record to show that the court went through any sort of thought process in whether independent testing was actually warranted in this case. All it said was that the motion was moot and then later said that the State's response was appropriate, which again, the State made the same mootness arguments below. And here, the record does show that Mr. Patterson was entitled to independent testing. In another sense, that if the same analyst retests DNA that she tested before, you suffer from a possibility of confirmation bias. DNA evidence to be admitted in court has to be verified by a third person. You can't verify your own results. They scan and testify at trial that 100% of their DNA analyses that they present in court are peer and administrative reviewed. It wasn't a retesting, it was a testing using a different method. Yes, an additional test, but there is still that bias that's in all of us. You're saying it was not signed off on by a supervisor? Your Honor, we don't know. There is a signature by someone named Sarah Owen, and it has reviewer under the signature line on that document. But there is nothing in the record of Ms. Owen's qualifications, what she did to verify or review the analysis or the conclusion. And so it also speaks to the fact that there's been no admission of this evidence. And I see my time is up, and I'd like to reserve the rest of the time for rebuttal. You actually have until the red light comes on, if you want. Oh. Well, if there are no further questions, I don't see any. Thank you, counsel. You'll have time in rebuttal. Mr. Escalera. May it please the court, counsel. Good afternoon, Your Honors. I am Rosario Escalera, and I represent the state. Your Honor, the defendant argues the trial court erred when it dismissed its petition for DNA testing under 116-3. The state disagrees and will primarily address the two issues today. The first issue is whether 116-3 allows for independent testing. And the second question or issue is even if the trial court had that discretion to allow independent DNA testing, did the trial court abuse that discretion? The answer is clearly no. As the first issue involves statutory construction, this was reviewed de novo. The defendant argues that 116-3 allows for independent testing because it is ambiguous. And because it is ambiguous, it requires the rule limiting it to grant or to rule in the defendant's favor. But more importantly, the defendant argues that it would be absurd to conclude that the legislature intended 116-3 to have the right to independent testing when Supreme Court Rule 412 allows for independent testing. In construing a statute, the primary goal is to determine the given effect of the intent of the legislator. The best evidence of that is the plain language of the statute. If the plain language of the statute is unambiguous, the statute must be applied as written without any statutory aids. Now here, Your Honors, the state's contention that the statute is unambiguous. There is no right to independent testing under the statute. So it's your position that the trial court would not have the discretion to order independent testing? And that's where I'm going to address my second question. Even if the trial court did have discretion, as the trial court stated, the defendant didn't have an objective basis for that motion. And I'll get into that right now. When the court stated that the defendant's objection is, or apparent basis, is that because Ms. Gannon was, her testimony was false and misleading. There has been no, like, there's been no hearing regarding that. There's been no testimony besides Dr. Wright's affidavit saying that it is. Well, as to Justice Holder-White's question, is it the state's position that the trial court does or does not have discretion to order independent testing? I believe the state's primary stance is that it doesn't have the discretion. But even if it does, then at least the defendant would need an objective basis to go on that motion. So, going back to my first argument, as I stated, the defendant does not have an absolute and unfettered right to independent testing. If the legislator wanted that right to give to the defendant, it would have added that phrase to the statute. Conversely, the defendant argues that, or sorry, the defendant creates the absurd result, he argued in his brief, by adding the statute and the Supreme Court rules altogether. Counsel, I just want to make sure that I'm clear on the point that both of the justices have asked about. There's a difference between having an absolute right to versus a court having discretion to allow. I understand you saying that based upon the language of the statute, there's no absolute right to independent testing in a post-conviction proceeding. Are you also saying that the trial court would not have had discretion to even order it in a post-conviction proceeding, had it believed it was necessary or appropriate to do so? Yes, Your Honor. Okay. Yeah, sorry. I'm sorry if I missed anything. As I was saying, Supreme Court 412 is the testing at the trial level and not at the post-conviction stage. Now, the defendant argues, and that's going to my second argument, that the defendant didn't have objective bases. The defendant argues, or argument, that there are several reasons why, but those are all meritless. As the state stated in its brief, and the defendant's original petition for his DNA testing, independent testing, he cited three cases. Now, it's not the state's attention to, we know the defendant is a non-lawyer, but that doesn't give the defendant the right to cite Rule 23 orders. If the state had the opportunity to do that, we would have done so, but obviously we can't. Well, counsel, let me ask you this, because we had this discussion with the opposing counsel regarding the testing that was actually done, and when the state indicated they were going to have the testing conducted to make the defendant's motion moot, did they do the type of testing that was recommended by a defendant's expert? From what I've seen from the record, yes. That's one of the tests that the defendant recommended, and he gave us several lists, and that was one of the tests that was accomplished, or done by the expert, was one of the tests that they did at that level. Now, there appears to be, for lack of a better term, a primary test, and then there's this additional test, and I can't remember the name of it, even though counsel was just saying it, this secondary test. Was that secondary test done? I don't believe so, no. Okay. But nevertheless, though, Your Honors, defendant, as I said earlier, there's been no hearing that Gannon's work was false or misleading at the time of the trial court. Dr. Wright's opinion, as it is, has been from 15 years of additional advances in DNA technology since the time of his trial. I think it would be inappropriate to say that Gannon's work was misleading if the State hasn't had an opportunity to rebut that presumption that she did do that. My question is that you kind of had a roadmap, because Dr. Wright has given you the advances since trial and said, here are tests which might be considered, and apparently there's one, this mini test, which might be particular to degraded samples. Since you chose to go ahead and retest, you chose this identifier plus amplification kit, which was one of them that Dr. Wright had mentioned. But do you know why? Or does the State Crime Lab have the capability of doing the mini test? Your Honor, I wish I knew. I have no idea. I could have probably asked beforehand. I did call the lab to see if that was the same person. It was obviously the same person. But if the State would like – There's nothing in the record. Yeah, correct. I mean, if I can go do additional research, I could ask them. But that would be beyond the record, I believe. As I was saying earlier, defendants cited three cases. One, which was a Rule 23 order. One was a cite to a case that is an actual, non-existent case. And the one case the defendant did cite did not mention independent DNA testing at all. Now, the defendant also argues that the State is trying to dismiss this case because it's mute. I disagree with that, Your Honors. Once the defendant filed his petition, the State wanted to make sure that the defendant had his opportunity in court to seek the truth. Well, did the State object to the motion? Initially, yes, it did, Your Honor. But it allowed the test to go on anyway. So I think just because the State initially objected doesn't mean that it wanted to dismiss his petition as mute. Well, what would have happened if the court sustained the objection? That's a good question, Your Honor. I have no answer to that. There would have been no testing, right? Right, exactly. Now, as to the issue about the same analyst, I think the record does, I believe during the motion to reconsider, counsel, the defendant's counsel stated, I believe she stated that it didn't matter who conducted the test. Even if someone else conducted the test, like in the Illinois Tech, that would have been fine. But I don't think it's the State made this Tech do this test. I think from what I understand is that they gave it to the Illinois Tech and then they assigned it to someone. It's not that the State told her to go do it. So we would ask that this court to affirm. If there are no further questions. I see none. Thank you. Mr. Gomez, rebuttal argument. First, I'd like to address the State's contention that the statute does not allow for independent testing. The State has said that there's no absolute right to independent testing, which we agree. There is no absolute right to independent testing. But there is a right to independent testing when the circumstances require it. And there are circumstances required here. There's nothing listed in the statute as to which laboratories or experts can analyze DNA. So it would be an error for this court to read exceptions into the statute that the legislature has not made. Moreover, Rule 412, which does allow for independent testing at trial, the State has not offered any reason why that right to independent testing or that option would be cut off after trial. They put it in the section relating to trials, and they don't put it in the section relating to post-conviction petitions. Well, the Supreme Court Rule 412 is the one that gives the right for independent testing at trial. Then there is a separate statute, which is Section 116-3, which doesn't state any sort of lab or expert or analyst who can test anything. But the principle is a truth. The whole purpose of the statute is a truth-seeking statute. Well, counsel, there are all sorts of things that are available during the trial portion of a case that aren't available later on, discovery and so forth. So just simply because it's allowed during trial doesn't mean that it should also be equally available after trial. Certainly, Your Honor. And that's not the main contention here. But because there's nothing written in the statute, there's nothing explicitly conferring this ability to a certain lab or analyst while denying it to another. These are just reasons to inform the absence of any language as to which facility or analyst could conduct that testing. And given that there is that absolute right to independent testing at trial, it would be absurd to conclude that that option would be unavailable to a defendant, where the trial analyst has been shown to be unreliable and made that same mistake ten years later of saying that there was a match where there wasn't a match. And it doesn't matter that that was never – Ms. Gannon's testimony was never brought up again at another hearing. It did not depend on Dr. Wright's affidavit. It's evident within the trial testimony itself. Well, counsel, I want to be clear. Are you arguing that we just need someone else to do the testing? Or are you also arguing that we need to do the specific testing suggested by the expert, which I think – what is it? The mini-filer. The mini-filer. In conjunction with the identifier. Right. So which is it? Well, Mr. Patterson's request was for an independent test. And Dr. Wright's recommendation is an identifier with a mini-filer supplement to it. So in an ideal world, when – if this were to be remanded to the circuit court for independent testing, that analyst, which would be someone independent of Ms. Gannon, would use the identifier and mini-filer in conjunction with each other. Because the purpose of the statute is, again, to seek the truth. And if there is a stated way to get the most full possible profile by using those two tests, then that should be the one used. And the fact that Ms. Gannon was not told to do it, just – there's – the state had the DNA retested to render the motion remote. They objected. They never stated that Mr. Patterson stated a colorable claim. In fact, at the status hearing on November 15, 2013, the state said, it has been the state's position all along that this is a frivolous petition for DNA. However, it's not cost-effective for the latter to contest it. And we don't want to lend it color or anything that may give rise to an exhumation order of the victim's body. So we have been attempting to get the testing done so that the petition would be rendered remote. So this was not an altruistic act by the state to have it retested. It was to get Mr. Patterson out of court. So for those reasons, we ask this court to reverse the circuit court's ruling and remand for independent testing. Thank you, counsel. Thank you both. The case will be taken under advisement and a written decision shall issue.